**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MULTI-SHOT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-09-3283 |
| | § | |
| B&T RENTALS, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

The plaintiff in this suit, Multi-Shot, LLC, has moved for leave to file a second amended complaint.  (Docket Entry No. 7).  The proposed second amended complaint would add causes of action against the existing defendant, B&T Rentals, Inc.  The amended complaint would also add a nondiverse party, Gilbert Villarreal, a former Multi-Shot employee, as a defendant, destroying this court's diversity jurisdiction.  B&T Rentals, Inc. opposes the motion for leave to amend.  B&T Rentals also asks this court to dismiss this suit because it is duplicative of two suits pending in the federal district court for the Western District of Louisiana, one filed before the present suit and one filed since.  (Docket Entry No. 10).  Multi-Shot has filed a reply.  (Docket Entry No. 11).

Based on the pleadings, the motion and response, the record, and the applicable law, this court denies B&T Rentals's motion to dismiss this case in favor of the Louisiana litigation.  Instead, this court determines that to the extent this case is duplicative of the suit B&T Rentals filed in Louisiana federal court, the Texas case was first-filed and should proceed.  This court grants Multi-Shot's motion for leave to amend to add claims against the existing defendant but denies the motion for leave to amend to add a nondiverse defendant and destroy diversity.

The reasons for these rulings are stated in detail below.

## I.    The Chronology of the Litigation

Multi-Shot is an oilfield services company headquartered in Conroe, Texas. B&T Rentals, Inc. rents oilfield equipment and has rented drilling tools and other equipment to Multi-Shot. An affiliated company, T&B Sales, LLC, sells oilfield equipment and also did extensive business with Multi-Shot. B&T Rentals and T&B Sales have common ownership and management and are headquartered in Lafayette, Louisiana.

The record discloses the following chronology:

- Late 2008 and early 2009: disputes arose over equipment leased by Multi-Shot from B&T Rentals.

- July 14 and 15, 2009: T&B Sales and B&T Rentals provided counsel for Multi-Shot with a detailed demand letter and copies of the invoices for which payment was sought.

- July 15, 2009: Multi-Shot sued B&T Rentals, T&B Sales, and the owner of both companies, Bryan Culotta, in Texas state court in Montgomery County, Texas, in the Southern District of Texas, asserting claims for fraud, breach of fiduciary duty, and commercial bribery. In the lawsuit, Multi-Shot alleged that it had received a demand for the payment of all goods and services T&B Sales and B&T Rentals had provided to Multi-Shot and for alleged damages to equipment provided by T&B Sales and B&T Rentals to Multi-Shot. The petition also alleged that one or more of its own employees had breached fiduciary duties owing to Multi-Shot.

2

- July 16, 2009: T&B Sales sued Multi-Shot in state district court in Lafayette Parish, Louisiana.  T&B Sales asserted claims for nonpayment of an open account and breach of contract.  The lawsuit alleged that T&B Sales had sold oilfield equipment to Multi-Shot for which it had not been paid.

- July 27, 2009: Multi-Shot nonsuited the petition it filed in Texas state court on July 15.

- August 20, 2009: Multi-Shot removed the Louisiana lawsuit filed by T&B Sales to the federal district court in the Western District of Louisiana, Lafayette Division.  It was assigned the case number 09-1473.

- August 20, 2009: Multi-Shot filed a suit for declaratory judgment against B&T Rentals in Montgomery County, Texas state court.  Multi-Shot alleged that there were a number of disputes as to charges for equipment provided by B&T Rentals.  Multi-Shot defined "disputes" in "its broadest sense to mean all of B&T's claims, demands, and causes of action of every kind and character for any and all recovery or payment from Multi-Shot arising from (a) the alleged rental by B&T Rentals of equipment to Multi-Shot; and (b) equipment allegedly damaged, lost, "not returned" and "mistakenly returned."  (Docket Entry No. 10, Att. 3, ¶ 14).  Multi-Shot alleged that it had dismissed the first suit it filed in Montgomery County because the parties were in settlement negotiations.  Multi-Shot sought a declaratory judgment that it was not liable for B&T Rentals's charges or damages for equipment allegedly rented to Multi-Shot; that Multi-Shot had not agreed to assume the risk of loss or damage to B&T Rentals or to pay the replacement value of any equipment lost, damaged, or

3

not returned; and that Multi-Shot was entitled to equipment that it had returned to B&T Rentals that was not owned by B&T Rentals.

- August 26, 2009: Multi-Shot counterclaimed in the federal district court suit filed by T&B Sales in Lafayette, Louisiana.  In that counterclaim, Multi-Shot alleged that T&B Sales had sold equipment in poor condition and refused to accept the return of equipment, and that T&B Sales had colluded with a former Multi-Shot employee acting "ultra vires."  Multi-Shot sought damages for fraudulent misrepresentation about the condition of the equipment and the return of payments it had been wrongfully induced to make.

- September 10, 2009:  T&B Sales moved for leave to add B&T Rentals as a party plaintiff in the removed suit pending in the federal court in Louisiana.  T&B Sales alleged that in addition to failing to pay for the equipment it bought from T&B Sales, Multi-Shot had also failed to pay for equipment it had rented from B&T Rentals, had damaged that rented equipment, and had converted or misappropriated that equipment.  The federal district court denied the motion to dismiss in November 2009.  In denying the motion, the court emphasized that Multi-Shot's counterclaim against T&B Sales in the Louisiana federal court only involved the sales transactions, not any rental transactions involving B&T Rentals.  The court also noted that the second, pending Texas suit filed by Multi-Shot was only against B&T Rentals.  The court concluded that the claims against Multi-Shot asserted by T&B Sales and by B&T Rentals were "in law and fact, claims of two different plaintiffs

on two different causes of action." The court denied the motion by T&B Sales to add B&T Rentals as a party plaintiff. (Docket Entry No. 11, Att. 1 at 6)

- September 11, 2009: B&T Rentals was served with the declaratory judgment suit Multi-Shot filed in Texas state court.

- October 9, 2009: B&T Rentals removed the declaratory judgment suit to this federal court.

- October 23, 2009: B&T Rentals counterclaimed against Multi-Shot in this suit for nonpayment of certain invoices by incorporating its Louisiana federal complaint.

- December 8, 2009: Multi-Shot filed this motion for leave to file an amended complaint to add claims against B&T Rentals and to add as a defendant Gilbert Villareal, Multi-Shot's former Motor Division Manager who had been involved with rental transactions. In the proposed amended complaint, Multi-Shot defined the "disputes" in "its broadest sense to mean all of B&T's contractual claims, demands, and causes of action of every kind and character for any and all recovery or payment from Multi-Shot arising from (a) the alleged rental by B&T of equipment to Multi-Shot; (b) equipment allegedly returned to B&T in a damaged condition; (c) equipment allegedly delivered to Multi-Shot and "not returned" to B&T; and (d) equipment allegedly returned to, and not owned by, B&T." (Docket Entry No. 7-1 at 5). Multi-Shot sought to add claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, and commercial bribery, arguing that they were responses to B&T Rentals's defenses and part of the claims against Villareal. Multi-Shot sought to add Villareal as a party, alleging that he had taken

5

payments from B&T Rentals while he worked for Multi-Shot and asserting claims for breach of fiduciary duty and commercial bribery.

• December 10, 2009: B&T Rentals sued Multi-Shot in the Western District of Louisiana.  In that suit, B&T Rentals alleges that Multi-Shot owed money for equipment rented but not paid for; for equipment that was damaged, lost, or not returned; and for equipment that was delivered to B&T Rentals and "misidentified" as B&T rental returns.  B&T Rentals named as defendants Multi-Shot, LLC, Multi-Shot Holding Corporation, Denham Commodity Partners Fund V, LP, and Denham Capital Management, LP, alleging that as a result of various investments and transactions, Denham Fund V and/or Denham Capital had agreed to be responsible for certain debts and obligations of Multi-Shot, LLC.  That case was assigned the number 09-cv-2090.

In responding to Multi-Shot's motion for leave to amend and add a nondiverse party defendant, B&T Rentals urges this court to dismiss this suit because it is duplicative of the litigation pending in Louisiana.  B&T Rentals argues that Multi-Shot filed this suit to "forum shop" and win the race to the courthouse to deprive B&T Rentals and T&B Sales of a Louisiana forum for the dispute.  B&T Rentals emphasizes that Multi-Shot did not refer to the Louisiana lawsuits in its motion for leave to amend its complaint. (Docket Entry No. 10).  In its reply, Multi-Shot argues that the lawsuits between B&T Rentals and Multi-Shot on the one hand, and T&B Sales and Multi-Shot on the other, do not substantially overlap.  Multi-Shot argues that the two lawsuits involving B&T Rentals, the earlier-filed Texas case and the later filed Louisiana case, concern disputes over equipment B&T Rentals rented to Multi-Shot over a six-year period, including equipment that was

allegedly returned damaged or not returned at all.  Multi-Shot notes that it intends to move in the Louisiana court for dismissal or transfer of that suit to this court.  The lawsuit in Louisiana filed by T&B Sales involves disputes over equipment that T&B Sales sold to Multi-Shot between January and April 2009.

II.    **B&T Rentals's Request to Dismiss Based on First-Filed Rule**

      A.    **The Applicable Law**

"Courts in the Fifth Circuit generally follow a 'first-filed rule' in deciding which Court should maintain jurisdiction over claims that arise out of the same subject matter but are pressed in different suits."  *Igloo Prods. Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tex. 1990); *see also West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985); *Service Corp. Int'l v. Loewen Group Inc.*, 1996 WL 756808, at *1 (S.D. Tex. Nov. 29, 1996).  The first-filed rule requires that "[i]n the absence of compelling circumstances, the Court initially seized of a controversy should be the one to decide whether it will try the case."  *Id.*  One "compelling circumstance" warranting an exception to a court's application of the first-filed rule is when a first-filed declaratory judgment action was filed for the purpose of forum-shopping.  *See Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983); *Johnson Bros. Corp. v. International Bhd. of Painters*, 861 F. Supp. 28, 29 (M.D. La. 1994); *909 Corp. v. Village of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990); *Igloo Prods.*, 735 F. Supp. at 217.  Whether to apply the first-filed rule is a decision within the discretion of the district court.  *Texas Instruments*, 815 F. Supp. at 997 (citing *Kerotest*, 342 U.S. at 183).

Courts have consistently held that in cases of duplicative filings in two federal courts, the "first-filed" court "is the more appropriate forum in which to determine whether the first-filed case

should proceed, or whether it should give way for reasons of judicial economy." *Supreme Int'l Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp. 604, 607 (S.D. Fla. 1997); *see also Texas Instruments*, 815 F. Supp. at 999 ("[T]he first-to-file rule gives the *first-filed* court the responsibility to determine which case should proceed." (emphasis in original)).

"Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599, 603 (5th Cir. 1999). The rule is "grounded in principles of comity. . . . The federal courts have long recognized that . . . courts of coordinate jurisdiction and equal rank [should] exercise care to avoid interference with each others' affairs." *Save Power Ltd. v. Syntek Fin. Corp.,* 121 F.3d 947, 950 (5th Cir. 1997). "In determining whether to dismiss an action, the court must answer two questions: (1) are the two pending actions so duplicative or involve substantially similar issues that one court should decide the issues; and (2) which of the two courts should resolve the case?" *Excel Music, Inc. v. Simone,* No. 95-3626, 1996 WL 5708, at *5 (E.D. La. Jan.5, 1996) (citing *Texas Instruments, Inc. v. Micron Semiconductor, Inc.,* 815 F.Supp. 994, 997 (E.D. Tex. 1993)). The court with "'prior jurisdiction over the common subject matter' should resolve all issues presented in related actions." *West Gulf Maritime,* 751 F.2d at 730 (quoting *Mann Mfg., Inc. v. Hortex, Inc.,* 439 F.2d 403, 408 (5th Cir.1971)); *see Excel,* 1996 WL 5708, at *6 ("In the absence of 'compelling circumstances,' the district court who gets the suit first should be one to decide the case").

The threshold inquiry here is whether "the issues raised" in both suits "substantially overlap." The issues need not be identical; "[w]here the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the

8

likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Id.* at 950-951 (quoting *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.,* 91 F.3d 1, 4 (1st Cir.1996)).  Generally, the issues presented in two separate actions need not be identical to allow one court to decide the action, "but there must be 'substantial overlap between the two suits.'" *Excel,* 1996 WL 5708, at *5 (quoting *West Gulf,* 751 F.2d at 730 (quoting *Mann,* 439 F.2d at 408)); *Save Power Ltd. v. Syntek Finance Corp.,* 121 F.3d 947, 950 (5th Cir.1997) (courts will generally dismiss a second-filed action if it presents a question that is closely related to the question raised in the first-filed action, or if the "overall content of each suit . . . would likely overlap"); *Wash. Metro. Transit Auth. v. Ragonese,* 617 F.2d 828, 830 (D.C. Cir.1980).  Furthermore, "[c]omplete identity of the parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action."  *Save Power Ltd.,* 121 F.3d at 951.  While the first-to-file rule "should not be regarded lightly," it is not a "rigid and inflexible rule to be mechanically applied, but rather is to be applied with a view to sound judicial administration."  *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95 (9th Cir. 1982).

## B.    Analysis

The record shows that the suit T&B Sales filed against Multi-Shot in Louisiana on July 16, 2009 does not substantially overlap with the case that Multi-Shot filed against B&T Rentals in Texas on August 20, 2009.[1]  The suit T&B Sales filed in Louisiana involves the equipment T&B Sales sold

---

[1]    It is appropriate to use the date the removed suits were filed in state court as the filing date.  In *Manufacturers Hanover Trust Co. v. Palmer Corp.,* 798 F.Supp. 161 (S.D.N.Y. 1992), for example, the defendant filed an action in New Jersey state court, plaintiff filed a second, parallel action in the Southern District of New York six days later, and plaintiff removed the first action to New Jersey federal court; the court found "ample authority for the proposition that the state court filing date is the relevant benchmark," collecting cases from the Ninth Circuit, Texas, New Jersey, West Virginia, and Pennsylvania.  (*Id.*).  The court further observed that "[t]he principles underlying removal also weigh in favor of the state filing date."

to Multi-Shot in 2009; the suit Multi-Shot filed in Texas involves the equipment B&T Rentals rented

to Multi-Shot over a much longer period.  While there will be common witnesses and evidence, the

claims and evidence are significantly different.  The Louisiana suit filed by T&B Sales is not more

inclusive of all issues surrounding the dispute between the parties.  After the Louisiana case is

decided, issues will remain for this court to resolve, making it appropriate for this court to retain

jurisdiction.  *See West Gulf*, 133 F.3d at 729 ("[A] district court may dismiss an action where the

issues presented can be resolved in an earlier-filed action pending in another district court.");

*Congress Credit Corp. v. AJC Int'l, Inc.*, 42 F.3d 686, 689 (1st Cir. 1994) (quoting *Thermal*

*Dynamics Corp. v. Union Carbide Corp.*, 214 F.Supp. 773, 774 (S.D.N.Y. 1963)) ("[T]he issues

'must have such an identity that a determination in one action leaves little or nothing to be

determined in the other.'"); *Smith v. S.E.C.*, 129 F.3d 356,  361 (6th Cir. 1997) (same).  Although

the suit Multi-Shot had earlier filed in Texas named both B&T Rentals and T&B Sales as defendants

and could have resolved all the claims subsequently asserted in the two Louisiana cases, Multi-Shot

dismissed that suit, without prejudice, during settlement discussions.  But the suit T&B Sales filed

against Multi-Shot in Louisiana in July 2009 does not significantly overlap with the suit Multi-Shot

filed in Texas against B&T Rentals in August 2009.

The Louisiana case B&T Rentals filed against Multi-Shot in December 2009 does

significantly overlap with the declaratory judgment case Multi-Shot filed against B&T Rentals in

*Id.* (citing 14A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3738 at 556-57 (1985) ("After removal, a federal court acquires full and exclusive jurisdiction over the litigation.  The removed case proceeds according to the Federal Rules of Civil Procedure and is treated *as though it had been commenced originally in the federal court.*") (footnotes omitted) (emphasis added)).  *See also*, *800-Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 131 n.1 (S.D.N.Y. 1994); *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.,* 20 F.Supp.2d 948, 954 n. 10 (E.D. Va. 1998); *First Health Group Corp. v. Motel 6 Operating L.P.,* No. 00C524, 2000 WL 984160, at *2 (N.D. Ill. July 17, 2000).

Texas in August 2009.  B&T Rentals argues that the presumption favoring a plaintiff's choice of venue in the first-filed action should be overcome by the fact that Multi-Shot filed this suit in anticipation of being sued in Louisiana.  The presumption may also be overcome if there is a showing of a that the balance of convenience favors the second action.  *See Employers Ins. of Wasau v. Fox Entertainment Group, Inc.*, 522 F.3d 271 (2d Cir. 2008) (recognizing an exception to the first-filed rule "where the "balance of convenience" favors the second-filed action"); *Igloo Products Corp. v The Mounties, Inc.*, 735 F.Supp. 214, 218 (S.D. Tex. 1990); *Ponche v. Geo-Ram, Inc.*, No. 96-1437, 1996 WL 371679, at *2 (E.D. La. July 2, 1996).

When the first-filed action is the result of a preemptive "race to the courthouse," a court may allow a later-filed case to proceed in place of the first-filed action.  But B&T Rentals has not shown that Multi-Shot's decision to file a declaratory judgment suit in Texas state court in August 2009 is a special circumstance that should lead to dismissal or transfer of this case to Louisiana.  As the Fifth Circuit has noted, every time a lawsuit is filed, a forum choice is made.  Dismissing a declaratory judgment action or deciding not to follow the first-filed rule requires more than an accusation of "forum-shopping."  Merely filing a declaratory judgment action in a court with jurisdiction to hear it, in anticipation of litigation in another forum, is not in itself improper anticipatory litigation or otherwise abusive "forum shopping."  *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 391, 397-98 (5th Cir. 2003).  Had Multi-Shot been intent on a race to the courthouse, it would not have dismissed, without prejudice, the July 15, 2009 Texas suit it filed against both B&T Rentals and T&B Sales.  Multi-Shot nonsuited the Texas case after T&B Sales had sued Multi-Shot in Louisiana on July 16, thereby giving up the first-to-sue position as to T&B Sales.  Nor has B&T Rentals argued that Multi-Shot improperly sought to change the substantive law to be applied by changing the forum.  Forum selection was not pursued in this case so as to

require dismissing this lawsuit in favor of another federal-court case.

The first-filed presumption can also be overcome by a showing that the balance of convenience favors the venue of the later-filed action. *See Employers Ins.*, 522 F.3d at 275; *Igloo Products* 735 F.Supp. at 218; *Ponche*, 1996 WL 371679, at *2. The factors traditionally weighed in the balance of convenience include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witness' attendance; (3) the cost of attendance for willing witnesses; (4) any other practical issues related to ensuring that trial is "easy, expeditious, and inexpensive"; (5) court congestion; and (6) the "local interest in having localized interests decided at home"; and (6) the law to be applied . *In re Volkswagen of Am.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (quotations omitted).   B&T Rentals has not shown why dismissing this case in favor of the second-filed Louisiana lawsuit would be more convenient to the parties or witnesses. It appears that there are witnesses in both Louisiana and Texas.  The events at issue took place in both Louisiana and Texas.  Resolving this case is going to require travel and inconvenience for some of the witnesses, whether the case is tried in Texas or Louisiana.  This factor does not support dismissal of the lawsuit.

B&T Rentals's request to dismiss this case is denied.

**III.    The Motion for Leave to Amend To Add Claims Against B&T Rentals**

Under Rule 15(a),  "[t]he court should freely give leave when justice so requires," a standard that "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Group, L.P.,* 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.,* 283 F.3d 282, 286 (5th Cir.2002)).  But leave to amend is "not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.,* 203 F.Supp.2d 704, 718 (S.D.Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 598 (5th Cir.1981)).  The decision to grant or deny leave to amend is within the trial

court's sound discretion.  A court should consider the following five factors in deciding whether to grant leave to amend a complaint: "(1) undue delay, (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Smith v. EMC Corp.,* 393 F.3d 590, 595 (5th Cir. 2004) (citing *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 864 (5th Cir. 2003)).  In the absence of any of these factors, the requested leave should be freely granted.  *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

 None of the first four factors applies here.  There is no basis to find undue delay, bad faith, dilatory motive, or undue prejudice.  The fifth factor, futility, means that "the amended complaint would fail to state a claim upon which relief could be granted."  *Stripling v. Jordan Prod. Co.,* 234 F.3d 863, 873 (5th Cir. 2000).  In determining futility, the court is to apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *Id.*  To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Elsensohn v. St. Tammany Parish Sheriff's Office,* 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570).  In *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly.*  The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citing *Twombly,* 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly,* 550 U.S. at 556).  Under this standard, futility is not a basis for denying leave to amend to add claims against B&T Rentals.

13

With the addition of the damages claims against B&T Rentals, the Louisiana case filed by B&T Rentals is entirely duplicative of this first-filed case. As the court in which the first-filed case is pending, this court concludes that the dispute between Multi-Shot and B&T Rentals should proceed in a single forum, and, as analyzed above, there is no basis to deviate from the first-filed rule.

## IV. The Motion for Leave to Amend to Add a Nondiverse Party

### A. The Applicable Law

"A court must scrutinize an amendment that would add a non-diverse party more closely than an ordinary amendment under Rule 15(a)." *Short v. Ford Motor Co.*, No. 93-8626, 21 F.3d 1107, 1994 WL 171416, at *5 (5th Cir. Apr. 19, 1994) (per curiam) (unpublished) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)); *see Tujague v. Atmos Energy Corp.*, No. 05-2733, 2008 WL 489556, at *1 (E.D. La. Feb. 20, 2008) ("[W]hen an amendment would destroy diversity the court should scrutinize that amendment more closely than an ordinary amendment."). If diversity was the only basis for the court's subject-matter jurisdiction and a district court permits joinder of a nondiverse defendant, it must remand the case to the state court. *See Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999) (citing 28 U.S.C. § 1447(e)); *Lindsay v. Ford Motor Co.*, No. 94-10503, 41 F.3d 664, 1994 WL 684970, at *4–5 (5th Cir. Nov. 22, 1994) (per curiam) (unpublished) (citing 28 U.S.C. § 1447(e)).

"A motion for leave to amend to add a nondiverse party whose inclusion would destroy diversity and divest the court of jurisdiction is governed by 28 U.S.C. § 1447(e), not Rule 15(a)." *Arthur v. Stern*, No. H-07-3742, 2008 WL 2620116, at *3 (S.D. Tex. June 26, 2008) (citing, among others, *Tillman v. CSX Transp., Inc.*, 929 F.2d 1023, 1029 (5th Cir. 1991), and *Whitworth v. TNT Bestway Transp. Inc.*, 914 F. Supp. 1434, 1435 (E.D. Tex. 1996)). "A party may not employ Rule

14

15(a) to interpose an amendment that would deprive the district court of jurisdiction over a removed action." *Whitworth*, 914 F. Supp. at 1435 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MAY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1447 (2d ed. 1990)).

Under 28 U.S.C. § 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  "In determining whether to allow joinder of a party under section 1447(e), a district court examines the factors set out in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987), and does not apply the 'freely given' standard of Rule 15(a)." *Arthur*, 2008 WL 2620116, at *4 (citing *Tillman*, 929 F.2d at 1029 & n.11; *Tujague v. Atmos Energy Corp.*, No. 05-2733, 2008 WL 489556, at *1–2 (E.D. La. Feb. 20, 2008); *Dumas v. Walgreens Co.*, No. 3:05-CV-2290-D, 2007 WL 465219, at *1 (N.D. Tex. Feb. 13, 2007)).  In *Hensgens*, the Fifth Circuit stated that in balancing the original defendant's interest in maintaining the federal forum against the competing interest in avoiding multiple and parallel litigation, a court considers: (1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction"; (2) "whether [the] plaintiff has been dilatory in asking for amendment"; (3) "whether [the] plaintiff will be significantly injured if amendment is not allowed"; and (4) "any other factors bearing on the equities."  833 F.2d at 1182.  The balance does not hinge on "a rigid distinction of whether the proposed added party is an indispensable or permissive party."  *Id.*; *see also Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999) (stating that joinder of nondiverse parties is "committed to the sound discretion of the district court" under § 1447(e) and "thus, this decision is not controlled by a Rule 19 analysis").

Granting Multi-Shot's motion for leave to amend to join Villarreal as a defendant would destroy diversity and this court's subject-matter jurisdiction.  The analysis requires an application of the standard set out in *Hensgens*.

15

**B.      Analysis**

The first *Hensgens* factor—whether Multi-Shot's primary purpose in seeking to amend is to defeat diversity jurisdiction—weighs in favor of denying the motion.  "When courts analyze the first *Hensgens* factor, they consider 'whether the plaintiffs knew or should have known the identity of the non-diverse defendant when the state court complaint was filed.'"  *Tomlinson v. Allstate Indem. Co.*, No. Civ. A. 06-0617, 2006 WL 1331541, at *3 (E.D. La. May 12, 2006) (quoting *Schindler v. Charles Schwab & Co.*, No. 05-0082, 2005 WL 1155862, at *3 (E.D. La. May 12, 2005)); *see Irigoyen v. State Farm Lloyds*, No. 03-0324, 2004 WL 398553, at *3 (S.D. Tex. Jan. 5, 2004) (denying an amendment to add two nondiverse insurance claims adjusters to a suit against an insurance company alleging violations of the Texas Insurance Code, negligence, breach of contract, breach of the duty of good faith and fair dealing, and the Deceptive Trade Practices Act when the plaintiffs knew before filing suit the names of the adjusters who had worked on the claims for the insurance company); *see also Tomlinson*, 2006 WL 1331541, at *3 (holding that when the plaintiffs sought leave to amend their complaint against an insurance company to add a nondiverse insurance agent, the plaintiffs purpose in amending was to destroy diversity because they knew of the insurance agent's identity and actions before filing suit in state court); *Selman v. Wyeth-Ayerst Labs.* (*In re Norplant Contraceptive Prods. Liability Litig.*), 898 F. Supp. 429, 432 (E.D. Tex. 1995) (holding that the proposed amendment was intended to defeat diversity when the plaintiffs had to know the identity of the nondiverse doctor who implanted the allegedly defective contraceptive device before they filed the suit in state court); *O'Connor v. Auto. Ins. Co. of Hartford Conn.*, 846 F. Supp. 39, 41 (E.D. Tex. 1994) (denying leave to amend to add a nondiverse insurance agency because the plaintiff knew of the agency's role but failed to name the agency in the state court petition).

Multi-Shot knew about Villarreal and his alleged role in the transactions with B&T Rentals before the first suit was filed in Texas or Louisiana state court.  Although Multi-Shot states in its motion that it only recently obtained additional evidence against Villarreal, that is inconsistent with the many references to the Multi-Shot employee who breached fiduciary duties and took money from B&T Rentals in the first state-court lawsuit, and with the allegations in the first state-court lawsuit that B&T Rentals and T&B Sales engaged in commercial bribery.

The second *Hensgens* factor is whether the plaintiff was dilatory in seeking leave to amend. Although courts generally find that a plaintiff "is not dilatory in seeking to amend a complaint 'when no trial or pre-trial dates were scheduled and no significant activity beyond the pleading stage has occurred,'" *Smith v. Robin Am., Inc.*, No. 08-3565, 2009 WL 2485589, at *6 (S.D. Tex. Aug. 7, 2009), the analysis is different when the proposed amendment is to add nondiverse defendants shortly after removal based on federal diversity jurisdiction.  In such a circumstance, "[a] delay of two months after the filing of the original complaint or almost thirty days after the notice of removal has been found dilatory."  *See Irigoyen*, 2004 WL 398553, at *4; *see also Ellsworth, LeBlanc & Ellsworth, Inc. v. Strategic Outsourcing, Inc.*, No. 03-0613, 2003 WL 21783304, at *3 (E.D. La. July 30, 2003) (holding that a plaintiff was dilatory in waiting two months after filing the complaint and nearly thirty days after removal before filing a motion for leave to amend); *Phillips v. Delta Airlines, Inc.*, 192 F. Supp. 2d 727, 729 (E.D. Tex. 2001) (same).  *But cf. Schindler v. Charles Schwab & Co.*, No. 05-0082, 2005 WL 1155862, at *4 (E.D. La. May 12, 2005) (holding that the plaintiff was not dilatory when she filed the motion to amend a month and a half after she filed her state court petition and less than thirty days after removal to federal court) (citing *Johnson v. Sepulveda Props., Inc.*, No. 99-2312, 1999 WL 728746, at *3 (E.D. La. Sept. 16, 1999) (amendment sought two months after state court petition filed held not dilatory), *McNeel v. Kemper Cas. Ins. Co.*, No. Civ. A. 04-

17

0734, 2004 WL 1635757, at *3 (N.D. Tex. Jul. 21, 2004) (amendment five months after filing of state court petition and six weeks after removal held not dilatory); *Vincent v. E. Haven Ltd. P'ship*, No. 02-2904, 2002 WL 31654955, at *3 (E.D. La. Nov. 20, 2002) (amendment five months after state court filing held not dilatory), and *Holcomb v. Brience, Inc.*, No.01-1715, 2001 WL 1480756, at *2 (N.D. Tex. Nov. 20, 2001) (amendment two months and one week after state court filing and one month and one week after removal held not dilatory)).  In this case, no pretrial or trial dates have been scheduled and no significant activity beyond the pleadings has occurred.  But the motion to amend was filed nearly four months after the state court action was filed and nearly two months after removal.  This second factor weighs slightly in favor of finding that Multi-Shot was dilatory in filing the motion for leave to amend.  *See Irigoyen*, 2004 WL 398553, at *4.

In considering the third *Hensgens* factor—whether the plaintiff would be prejudiced by denying leave to amend—courts consider whether the already named diverse defendant would be unable to satisfy a future judgment.  *See id.* at *5; *O'Connor v. Auto. Ins. Co. of Hartford Conn.*, 846 F. Supp. 39, 41 (E.D. Tex. 1994).  Some courts analyze whether the possibility of a separate state court proceeding weighs against denying the proposed amendment because of the inefficiency of parallel proceedings, *see Bienaime v. Kitzman*, Nos. 00-0284, 00-0473, 2000 WL 381932, at *5 (E.D. La. Apr. 12, 2000), or because such proceedings would place a financial burden on the plaintiff, *see Schindler v. Charles Schwab & Co.*, No. 05-0082, 2005 WL 1155862, at *4 (E.D. La. May 12, 2005).  There is no indication that B&T would be unable to satisfy a judgment.  Because Multi-Shot did not sue Villarreal in state court, it is less likely that there will be parallel state proceedings if the motion for leave to amend is denied.  The third *Hensgens* factor weighs in favor of denying the motion for leave to amend.

18

The final *Hensgens* factor requires this court to analyze other equitable factors.  Although equitable factors include whether granting leave to amend would deprive a defendant of a properly invoked federal forum, *see, e.g.*, *Smith v. Robin Am., Inc.*, 08-3565, 2009 WL 2485589, at *6 (S.D. Tex. Aug. 7, 2009), and whether denying leave to amend would result in parallel state court proceedings, *see Tomlinson v. Allstate Indem. Co.*, No. 06-0617, 2006 WL 1331541, at *6 (E.D. La. May 12, 2006) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)), these factors are likely to be present whenever a plaintiff in a removed case seeks to add a nondiverse defendant. Those factors have already been analyzed in considering the first three *Hensgens* factors.  Because neither party points to additional equitable factors beyond these considerations, the fourth *Hensgens* factor is neutral.

Considering the *Hensgens* factors, this court concludes that the proposed amendment is primarily for the purpose of defeating federal jurisdiction; Multi-Shot was slightly dilatory in naming Villarreal as a defendant; Multi-Shot will not be prejudiced by denying the amendment; and neither party has presented additional equitable considerations.  The motion for leave to amend to add Villarreal as a defendant is denied.

## IV.  Conclusion

Multi-Shot's motion for leave to amend to add claims against B&T Rentals is granted; the motion for leave to amend to add Villarreal as a party is denied; and B&T Rentals's motion to dismiss this case is denied.

SIGNED on January 26, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

19